May it please the Court, Jesse Panuccio for the United States. I'd like to reserve three minutes for rebuttal, if possible. You may, and watch the clock. It goes down. Thank you, Your Honor. The key question in this appeal is whether the Assistant Attorney General has statutory power to place law enforcement cooperation conditions on federal funding for law enforcement activities. Judge Real's preliminary injunction should be reversed because the conditions at issue here are authorized by Chapter 101 of Title 34, both by the special conditions language in 101-02-A-6 and by the Burn-Jag statute itself. This conditioning power is one that the Assistant Attorney General has exercised for years without challenge by Congress or grantees. Enhancing cooperation in the law enforcement community is one of the Assistant Attorney General's— conditions that have been imposed before under the authority that you're claiming here. There are numerous special conditions— Can we separate that authority to the statute—the grant provision itself? You said there were two lines of authority, right? Yes. There is the 101-02-A-6, which would be the special conditions language, and then there is 101-53-A-4-5. So, focusing on A-6, Judge Bybee, you had asked for some special conditions that have been in place over the years. There are in the 2017 grant, for example, 57 special conditions in the excerpts of record. But special conditions 13, 28, and 29, 34, and 35—I'll tell you what a few of those are. 13, for example, requires funded training materials to comply with OJP principles for training materials. Special conditions 28 and 29 place information sharing and IT requirements on grant recipients. So, for example, if you are engaged in any kind of information sharing, you have to comply with what's called DOJ's Global Justice Sharing Initiative. Another would be special condition 57, uploading DNA results to CODIS, the national database for DNA. Special condition 44, you have to provide quarterly reports on training if you provide training on the use of force or racial or ethnic bias. So this is a power that has been used— I will say that most of those, counsel, sound like they are quite germane to the Berne Act itself, in other words, to what we're doing. Reporting conditions, quarterly reports, is sort of nothing out of the ordinary. I mean, that seems integral to the program. The DNA results sounds a little more interesting. The training and information sharing quarterly reports really doesn't sound all that interesting. Well, Your Honor, the quarterly reports are about use of force and racial and ethnic bias, important issues in the criminal justice— Now, these are things that the Bureau of Justice Statistics is trying to collect. I mean, there are things here that are useful, that are sort of integral to the program that DOJ is enforcing here within the Berne— Well, I would say the Berne JAG program is about law enforcement generally, and those things, use of force— That's a pretty high level of abstraction. It is a high level because it is a broad grant, and that is not unusual for these types of grant programs. They have broad purposes, and then it's left to the expert administrative agencies to fill out the details. Opposing counsel says special conditions is a term of art and refers to the various regulations, some expired or repealed and some have been incorporated by reference, and there's a reference to that in 101-09-82. What's your response to that argument? And if you disagree it's a term of art, where is it defined anywhere in the statute or regulations? Well, I'll take that in two parts, Judge Akuta. I do disagree that it is incorporating the term from the prior Reg 28 CFR 66-12, and there's several reasons for that. One is that there's no indication anywhere in the statute, in legislative history, or in subsequent practice that that is what Congress was doing. In fact, the regulation, that regulation wasn't replaced for 12 years. So if Congress had been doing that, you would have assumed that the regulation would have been obsolete. And when it was replaced in 2014— But it gives some meaning to the term special condition. Otherwise, I've only seen that term in the supervisory lease context, where it's different than a standard condition that's imposed on everyone. It's a special condition imposed just on one individual before the court. So special condition inherently seems to be something specific to a single grant, as opposed to the standard conditions that would be applicable to all grants. So I'm trying to understand what is the—what should we look to to understand the definition of what a special condition means? I think you look to the plain meaning of special, which in the dictionary is defined— Well, I mean, it's not standard is what I understand it to mean. That's how it's used in most contexts. Well, Judge, most dictionaries say the term special means designed for a particular purpose. And here you can imagine that Congress was thinking as OJP is surveying what's happening in the criminal justice community, it needs to change to emergent need, changing circumstances. So every condition is designed for a purpose, we hope. So how does that justify— Yes, but special would be one that are outside the normal—I'm sorry to cut you off. No, go ahead. Special—the reason that Congress is delegating something to the AAG is to say, here's the basic program, these are conditions that generally apply, but we realize it's the AAG with the statutory power to maintain liaison throughout the law enforcement community. So you're saying any condition whatsoever, you believe that Congress authorized the Attorney General to impose any condition whatsoever, like some portion of the grant has to be used to build a hospital, for example? Not any condition whatsoever. Why not? That would be a special condition that would be designed for a particular purpose, and it would be outside of the statute, like the hospital condition. Under South Dakota v. Dole, it has to be germane to the program at issue. And this is not so surprising. There are certainly hard hypos that I'm sure Your Honor could come up with, and they have tried to— But what about South Dakota itself? Can you regulate state maximum speed limits? Well, Congress certainly can. And so the question comes back to whether Congress— In the burn program, can you condition this on a state adopting a particular speed scheme? Well, I think if it were related to law enforcement, to directions, to prevention— In some circumstances, it might not be difficult. And so there are— Right. So you could just simply regulate speed on international—I'm sorry, on interstate and state roads by just saying, well, it has a law enforcement purpose, and so we're going to enforce it through the Burn Act. Your Honor, there is no question that the A6 delegation is a broad one. But that is not so surprising. L.A. in its brief concedes at pages 26 and 40, and the Third Circuit and the Seventh They both—they all say Congress knows how to engage in this kind of delegation and, in fact, has done that very thing in the violence against women statute. So it just comes back to the question of whether A6 has any meaning at all or has no meaning. And my friends on the other side, the Seventh Circuit, the Third Circuit, every court to engage with this question thus far has not been able to provide any meaning for A6 other than the one we provide. They simply say it's superfluous. And that's quite surprising because this was not— No, they don't. What they say is that it has to be otherwise delegated in some area by the Congress to the Attorney General and then by the Attorney General to the Assistant Attorney General. So it's a straightforward delegation, and you're really arguing that it's completely unbounded by any delegation at all. Your Honor, the problem with that position is twofold. One, this— It's not a position. It's a inquiry. The argument of the other side. Inquiry. Yes, I'm sorry. But the answer to that is twofold. This particular clause was an amendment to A6. Prior to this clause being included, the amendment, the A6 read, The Assistant Attorney General shall exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, period.  If there was a delegation from the Attorney General or there was a delegation somewhere else in the chapter, then the text as it existed prior to 2006 already gave that policy. It feels like a belt and suspenders approach, though. You got the belt and then somebody wanted to add the suspenders. Well, including can be either illustrative or a term of expansion, and there are cases saying both of those things, and we've pointed to them in our briefs. And you need to— What's ironic, the title of that section is Duties and Functions of the Assistant Attorney General. And that just seems like just a very broad, very general, we want to make sure that the new AAG for this section has the appropriate powers that he and she needs. Well, remember, this was an amendment in 2006, so this was not when the AAG was created. This came much later as the burn-jag program was introduced and recodified in 2006 and reworked. This amendment specifically was put in. And if you look at the context, the Supreme Court has said in the Stone case, when Congress acts to amend a statute, courts presume it has some meaning. And again, the City, the Third Circuit, the Seventh— I'm sorry, be very precise. What precisely was added in 2006? Just the including language or the whole thing? Everything after the comma after Attorney General, including and then everything that comes after that. And we have not seen in any opinion we've had on this case any meaning ascribed to that phrase. And if you look at the context, look at the House report. The House report states plainly, it says only one line about what this is doing. And the House report says this amendment allows the Assistant Attorney General to place special conditions on all grants and determine priority purposes for formula grants. So in context, including is a word of expansion that is quite common in statutes. And it's also quite common and consistent with both the purpose of OJP and what it does, which is to maintain liaison throughout the law enforcement community and be able to react to emerging trends. And what you often see is a feedback loop here. The AAG and the staff of OJP are out there talking to law enforcement. They see an emerging need. They steer grant programs toward that. And then sometimes Congress reacts and makes it a permanent feature. That's exactly what happened with the body armor special condition, for example. That body armor, the requirement to purchase and the kind and the training that has to come with it, all of that was imposed by OJP as a matter of policy four years before Congress amended it and put it in the statute. So that is exactly the type of feedback that is going on here. Counsel, let me ask you about the scope of the injunction. In this case, the district court limited it to the parties before the court. Is that correct? Yes, it is. And the Seventh Circuit did not. And did the Third Circuit? Is that a nationwide injunction? The Third is limited to the city of Philadelphia. The Seventh Circuit, there's two different cases proceeding there. It's the district court case, and then the Court of Appeals narrowed it? Right. Well, there's a Conference of Mayors case, and there's also a Chicago case. Okay. I believe the Chicago injunction is now I think the Conference of Mayors case extends to all members currently, but that's still in the district court if I have the possibility. Okay. So it's not a nationwide injunction? I thought the city of Chicago case was the Seventh Circuit's decision. I believe stayed by the district court. Okay. So we currently do not have a nationwide injunction pending anyplace else? Well, Conference of Mayors applies, although not nationwide, to all of the members, which covers many of the parties. I'm just wondering whether that moots this proceeding. If there's a nationwide injunction in place, we can't countermand that. Well, courts proceed in the face of nationwide injunctions from other courts. That is, of course, one of the problems we have pointed out in many cases with nationwide injunctions. I understand. However, I think the case is still live because those cases are on appeal. I don't think it moots this case. This case is still free to act, and these cases will move up. Has there been a notice of appeal filed? I'm sorry? Has there been a notice of appeal filed in the conference? I believe that case is still in the district court. All right.  Thank you very much, Your Honor. Thank you, Your Honor. Good afternoon, Your Honor, and may it please the Court. Nima Sani on behalf of the City of Los Angeles. The government claims sweeping authority to impose any condition on burn-jag funding based on a single residual including clause buried within a list of ministerial duties of the Assistant Attorney General. As two appellate courts have already found, that position finds no support in either the text, the structure, or the purpose of the statute which established the burn-jag program. Congress designed burn-jag as a mandatory formula grant carefully calibrated to provide automatic funding to states and localities, subject to limited exceptions. The DOJ's reading of Section 101-02-A-6 would subvert that mandatory formula and it's been rejected by each court to consider it. That reading suffers from three fundamental flaws. First, it renders meaningless a host of other provisions throughout the U.S. Code. Second, it wrongly assumes that Congress would speak on this issue, would legislate on an issue of national importance, and do so in a vague and oblique way, in an otherwise bureaucratic provision. But Congress does not hide elephants in mouse holes. And third, the DOJ has yet to articulate any limiting principle on its authority under Section 101-02. So Cass, let me go to the third, let me go to your third principle first, the limiting authority, because I guess I'm, I want to know whether you've got a limiting principle here. So for example, I think in the record there's a reference to that as a condition of receiving the Bern JAG award. So is that within the A-6 authority or within other authority found in the statute? So again, the A-6 authority, we don't submit, would provide any independent grant of authority here. Okay, all right, so we'd have to look to another source of authority. So where would a body armor provision fit under? So you have to look to the authorizing statute. Here it's the Bern JAG statute, and that statute speaks to a couple of certifications and assurances. There are very limited areas where the department may impose certifications or assurances, and those also include a requirement that the agency can require other applicable laws. And so if there's a law that's applicable to federal grantees, it deals with the use of grant funds, and in this case there is with body armor, then in that case you can impose that sort of condition. There is nothing similar for the notice of access. You're suggesting that there's another federal law that requires the use of body armor? So the body armor provision is now codified in the statute at 102.02, I believe, and that is a statutory provision that codifies that requirement. As my colleague noted, that was codified later, but however at that same point there's clearly a nexus there to the use of the grant funds. This is saying if you look at the statute, it talks about equipment, about supplies. That's what these grant funds are supposed to be used for, and there's a nexus there. And so Congress has codified that, saying that may be a condition that you can impose. There is nothing similar to that with the notice and access condition. Opposing counsel makes the argument, I guess against your argument and the other circuits, that your position would make the including language essentially superfluous and have no meaning at all. What's your response to that? Your Honor, I don't think it's meaningless. I think including clauses serve a purpose. They're often repetitive of what's already there. So you're saying Congress amended the statute just to repeat what it had already said? I think Congress amended the statute to provide a clarifying function, and where we learn that is from the text act itself. They use the word include. So they delegated, they said that the AAG could exercise all powers that were delegated by the Attorney General. And so the including clause doesn't add anything under your interpretation. Is that what you're saying, that Congress amended it, but to add something that had essentially no meaning? No, what Congress did was clarify that where you otherwise have to include. Why is that clarifying if you can delegate whatever authority he has? So, for example, Your Honor. How does it change? I need to understand what independent meaning it has, because you say it doesn't authorize any independent grant of authority, but it seems difficult to say Congress acted to amend the statute without adding any additional meaning. So I need to understand that. So, Your Honor, as an example, let's turn to a neighboring statute, which is where Congress did impose the authority on the DOJ to impose terms and conditions on discretionary grants. So that's in 10442, I believe. And so there Congress said for discretionary grants within the same purview of the Office of Justice Programs, you may impose terms and conditions. It was expressed on that. In this language, the including language would say where that authority otherwise exists to impose terms and conditions, that includes the ability to impose special conditions. That wouldn't have been there if that language hadn't been added. We wouldn't have read the statute as providing that authority. I think it provides an illustration of the types of things. Okay, so you're saying it doesn't actually do anything. It has no effect, is your position. My position is that this is a duties and functions clause. This is almost a job description for the Assistant Attorney General. There are a lot of things. If you look through Section 10102A1 through 5, they may provide and disseminate information. He may maintain liaison. Those are all things that it wouldn't be the case that if he didn't, if there wasn't this clause, the Assistant Attorney General wouldn't be able to provide information on criminal justice. The notion is that there is otherwise grants of authority or delegations of authority to the Assistant Attorney General. And this language clarifies and illustrates one of those grants that otherwise exists in some portions of the statute. It does not exist for the Berne-Jagg statute, which contains nothing like the language in the neighboring statute that says you may impose terms and conditions on discretionary grants. That's not the case here. And, again, the structure... And, of course, it says on all grants. So you're saying, no, not on this grant. And then it specifically references formula grants in the second clause. Right, Your Honor. So what are the priority purposes elsewhere in the statute? So in certain formula grants, there may be some room for discretion that allows you to have that priority purpose. That's not the case for Berne-Jagg. This is a formula grant. Which one does allow for priority purpose in a formula grant in that title? Can you point me to that? I'm not aware of any formula grant that currently allows for that. For Berne-Jagg, however, this is a mandatory formula grant in which there's very little room for discretion anywhere. If you look at 101-5-2, Congress said to the Attorney General, you must make grants in accordance with the statutory formula set forth in 101-5-6. And 101-5-6 contains another command. It says the Attorney General shall allocate pursuant to the formula set forth therein. And there's only two criteria listed there, a state's population and violent crime rate. There are very limited deviations permitted by the statute. Congress set those out expressly. The Attorney General has discretion over the form of the application. The Attorney General has the ability to impose the specified certifications and assurances set forth in the Berne-Jagg statute. And where Congress wanted to allow the Attorney General to withhold money based on compliance with other federal objectives, it said so expressly, 10% withholding for noncompliance with SORNA, up to 10% for failure to comply with the Death in Custody Reporting Act. And the DOJ's reading presents a number of statutory anomalies because how can it be that Congress said you may deduct 10% for SORNA, but under 101-02, DOJ could withhold 100% for that same noncompliance? Those two don't gel. And there hasn't been any explanation from the government on how to explain those other provisions that would be rendered meaningless if its reading of 101-02 was accepted. And again, the purpose of this statute, so we've talked about the text, which very clearly limits authority to specific areas and doesn't mention civil immigration enforcement in any regard. And then the structure of the statute. This is a mandatory formula grant with very limited deviations permitted. And a number of other places where Congress expressly said you have the right to impose terms and conditions. That's not the case here. For the purpose of the statute, this is a statute not just about law enforcement. This is a statute about empowering localities to have flexibility to determine their own priorities. And this goes against that. This is saying you must have a policy. You must have a law in place that does this. If you look at some of these other conditions, the other conditions that my colleague referenced, a number of them deal with the use of grant funds. Even the DNA condition, which Judge Bybee noted, deals with if you use the grant funds for this DNA collection purpose, then report that data. There's a tie there to the information and how the program and the funding is being used. And so there's authorization there in the statute. What's telling is that with 10102, the DOJ has never relied on that authority before this year. We noted in our briefs that if you compare the 2016 grant to the 2017 grant, in the 2016 grant, DOJ did not include 10102 as one of the lists of its statutory authority. It only added that in 2017. So the House of Cards will not fall if 10102 is rejected as a source of its authority. The DOJ has been imposing historically these conditions for years, and its own historical practice imposes a limit on what's acceptable. Because if it's about the use of grant funds, preventing abuse of grant funds, handling of grant funds, that's one thing. But this is very different. This is using the control over grant funding to leverage another agency's policy objectives. And that feels very different. Counsel, is there – does this court have any obligation to apply Chevron deference here? Your Honor, the government has not argued Chevron deference. Does that mean they've waived it? I'm not sure that's waivable by us. Well, I haven't seen it in their briefs. They haven't argued it. And frankly, it's not particularly surprising. Well, what they haven't argued is that the statute is ambiguous in any way. And they haven't argued that in any of their briefs, in any of the other cases, either in the Third or the Seventh Circuit. So since they're not arguing that the statute is ambiguous, that's something they could – an argument they could have made and probably waived by not arguing it anywhere. That's right, Your Honor. And I think we believe that the statute is not ambiguous in any respect. It's very clear what is authorized and what isn't. And the notice and access conditions clearly fall outside the scope of what's authorized. And the agency, the change in position, the new reliance on 101-02, it's hardly surprising they're not relying on Chevron deference given that there's now an entirely new statutory authority that was just found in 2017 that they never relied upon before. But again, they have not made that argument. They may have relied on it before. It hasn't been challenged before.  It's in our briefing. But if you look at their 2016 award sheet conditions, there is no reference to 101-02 amongst its statutory authority. That newly shows up in the 2017 Greenville award. So again, there's a discrepancy there. They said that, oh, we've been using 101-02 for all these years, but they never cited it before. And that's ER-32 is the 2016 award and ER-8 is the 2017 award where you can see that difference. Is that correct that the other conditions have not been challenged? So we don't have any court rulings on other conditions that they made as a condition of getting the Byrne JAC grants? That's my understanding, yes, Your Honor. This is the first time that conditions imposed on the grant funding have been challenged. That is my understanding, Your Honor. Thank you. So I'd like to briefly address as well the question of whether the Byrne JAC statute itself authorizes these conditions. And the answer is clearly they do not. The statute, as I noted, has very limited areas in which the Attorney General is given discretion. One is the form of the application. Two is a requirement that programmatic or financial information can be provided to the agency. But, again, that is information about how the funds are being used. What is the use of these funds? How are they being handled? And what is the program itself that's being funded doing? So in the LA's case, that's the CLEAR program, which is a collaborative program, a highly innovative, locally designed program about coming up with local solutions for criminal justice needs to the city of Los Angeles. There's no authority elsewhere in the statute for these conditions in any respect. The DOJ in its brief cites 10153A5C, I believe, for its access condition, but that has been squarely rejected by the Seventh Circuit and the Third Circuit on the notion that appropriate coordination, that there has been appropriate coordination, that's not something that requires ongoing coordination with the federal government. This is about the form of the application. Again, the Attorney General's discretion is limited to the application and the very clearly specified indicators in the statute of what the department may do, and there's nothing like the notice and access condition anywhere in there or in any other applicable statute. Okay, so before you come to the end of your time, to what extent and in what manner do you rely on 34 U.S.C. 10228 to prohibit the Attorney General from enacting these conditions? Your Honor, I don't think we're relying on that as an outright prohibition because I think there's no express authorization, which is what would need to be the case in order for this to not be ultraviolet. But 10228 provides some indicators that Congress did not expect that this sort of funding was to be used to issue any sort of directive or command or in any way control how local governments are operating their law enforcement agencies. And that's very much what the notice and access conditions do, and so 10228 further tells us that Congress did not intend for these sorts of conditions to be within the realm of what is authorized. Would that apply to other grant programs in addition to the Byrne Act? Your Honor, I think it would apply to anything within that chapter. I believe it says nothing in this chapter, so any other grants within that authorization. Thank you, Your Honor. Thank you. I'd like to address, Judge Akuta, what you had asked me at the outset and I didn't get a chance to finish, but you had asked about the regulation and the meaning of the term special. And I just want to point out, with respect to that regulation, there are several reasons to believe it is not how Congress was defining special conditions. First of all, OJP, immediately after it got this new authority in 2006, began using the term special conditions for all of those general conditions that it applies to all grants. So there is an unbroken chain of agency action here. Do you agree that you've waived any reliance on Chevron so that your interpretation of the statute would not be entitled to deference? We are not relying on Chevron in these cases, Your Honor. So what does that mean? Well, I think it means the Court, to the extent our arguments are persuasive, the Court is interested. But does it mean that you're basically operating on Chevron step one, that is that you believe that this is unambiguous and your argument is going to rise or fall on that statutory argument and not on some kind of deference to your interpretation? Not where we are in the big scheme of things. We're not relying on Chevron deference, Your Honor. But to the extent the Court thinks it's ambiguous, the Court is still obliged, as are we, to look at the context of the term, the plain meaning of the term. And again, just to add one other thing on this. To clarify, you've never argued that the statute is ambiguous. We have never argued, and we're not. And you're not arguing that it's ambiguous. And you're saying, but you can do whatever you want. But I don't know if you can. But go on. I just want to make sure I understand this correctly. We are arguing that when Congress amended A-6 in 2006, that act had meaning. And what you didn't hear from my friend is any meaning for that term. And the Supreme Court has said in INS v. Stone, when Congress amends a statute, courts presume it is doing something, that those words have meaning. And my friend was challenged and said, what meaning could this term possibly have? And L.A. cannot give it one. And the only possible meaning we've ever heard is it incorporated this CFR. And I just want to point out that the term special conditions has never been used that way. OJP has never used it that way. And when that reg was replaced in 2014, long before this became an issue, in 2014, the reg now says specific conditions. It doesn't say special conditions. And in Special Condition 15, OJP actually deals with high-risk grantees, as it has for years, and it says, if you are a high-risk grantee, we will place additional requirements. So this idea that there is this term of art, special conditions, that deals with high-risk grantees, it has never actually existed in the administrative world. I think I'm over my time. With that, I'll submit. All right. Thank you very much. Thank you very much, Counsel. Thank you, Counsel, for your excellent arguments today. And the case of Los Angeles v. Barr is submitted.
judges: Wardlaw, Bybee, Ikuta